

**IT IS ORDERED as set forth below:**

**Date: March 18, 2019**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

## IN THE UNITED STATES BANKRUPTCYCOURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | **Case No. 18-59660-pwb** |
| **MARK LOUIS GREINER,** | : | |
| Debtor. | : | **Chapter 7** |
| _____ | : | |
| | : | |
| **JASON L. PETTIE, Chapter 7 Trustee for** | : | |
| **the Estate of Mark Louis Greiner,** | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | **Adv. No. 18-05208-pwb** |
| | : | |
| **QUICKEN LOANS, INC.,** | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON MOTION TO DISMISS COUNTERCLAIM

Plaintiff Jason L. Pettie, in his capacity as Chapter 7 Trustee (the "Trustee") for the estate of Mark Louis Greiner (the "Debtor"), asserts in his complaint that defendant Quicken Loans, Inc. ("Quicken") received a transfer voidable as a preference under 11 U.S.C. § 547(b) when it recorded a security deed on the Debtor's residence 56 days after its execution and the note it secured and 73 days before the filing of Debtor's chapter 7 case.

A bankruptcy trustee may avoid a transfer as a preference under § 547(b) only if the transfer occurred within 90 days of the bankruptcy filing (or a year in the case of an insider).  § 547(b)(4)(A).  Quicken defends on the ground that the transfer occurred when the debtor executed the security deed, which was outside the 90-day period.  Quicken's position is that, prior to the recordation of its security deed, a bona fide purchaser could not have acquired an interest superior to its unrecorded security deed because of its equitable subrogation rights and because principles of inquiry notice charge a bona fide purchaser with notice of it.

This Order addresses the question of when the transfer occurred for purposes of § 547(b).  The Court concludes that, based on the facts that Quicken alleges, the transfer did not take place until the recordation of Quicken's security deed.

## I.  POSITIONS OF THE PARTIES

11 U.S.C. § 547(e) states the rules for determining when a transfer of property occurs for purposes of § 547.  Under § 547(e)(2)(A), a transfer takes place

when it takes effect between the parties if it is perfected at, or within 30 days after, that time. If the transfer is not timely perfected, however, § 547(e)(2)(B) provides that the transfer takes place when it is perfected.

With regard to a transfer of real estate, perfection occurs, under § 547(e)(1), "when a bona fide purchaser of such property against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee."

The Trustee contends that, under the Georgia law applicable here, a bona fide purchaser of the Debtor's residence would acquire title to it unencumbered by Quicken's security deed until its recordation on March 17, 2018. If the transfer occurred on March 17, the Trustee has met three of the five elements of a preference under § 547(b): (1) it was made to a creditor (Quicken)[1] (2) on account of an antecedent debt (the loan Quicken made upon execution of the security deed 56 days earlier)[2] (3) within 90 days of the Debtor's bankruptcy filing.[3] The two remaining requirements for avoidance under § 547(b) are that the Debtor was insolvent at the time[4] and that the security deed enables Quicken to receive more than it would in this case if the transfer had not been made.[5]

---

[1] 11 U.S.C.A. § 547(b)(1).

[2] 11 U.S.C. § 547(b)(2).

[3] 11 U.S.C. § 547(b)(4)(A).

[4] 11 U.S.C. § 547(b)(3). A debtor is presumed to be insolvent during the 90 days preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(f).

[5] 11 U.S.C. § 547(b)(5).

Quicken's position is that its security deed was perfected under § 547(e) from the date of its execution, January 30, 2018, which is outside the 90-day preference period.  Most of the proceeds from the loan Quicken made on that day went to pay off an existing purchase-money note and security deed on the residence.  The existing security deed was not cancelled in the real estate records until February 26, 2018.  Quicken invokes the doctrine of equitable subrogation,[6] under which its security deed may have the same priority as the security deed that its loan paid, to establish perfection until cancellation of the earlier security deed.

Upon cancellation of the earlier security deed, the real estate records showed no outstanding security deed on the Debtor's residence.  Quicken asserts that the lack of a recorded security deed is a fact in the chain of title that would require a purchaser to inquire about the existence of an unrecorded security deed and that such inquiry would lead to discovery of its security deed.  Because a purchaser who does not conduct a required inquiry takes title subject to a prior unrecorded interest that the inquiry would have revealed, Quicken concludes that a bona fide purchaser could not have acquired an interest superior to its security deed between the times of cancellation of the existing security deed (February 26) and recordation of Quicken's security deed (March 17).

---

[6] Amended Answer to Complaint ¶ 55, [7-1] at 7.

4

Under Quicken's theories of equitable subrogation and inquiry notice, a bona fide purchaser could never have acquired an interest superior to Quicken's security deed. It follows that perfection under § 547(e)(1) would occur upon its execution on January 30, 2018, and the transfer would occur on that date under § 547(e)(2). If Quicken is correct, the Trustee's preference claim fails because January 30 is outside the 90-day preference period.

After discussing the procedural posture of this proceeding (Part II) and the undisputed facts that are material to the issues as set forth in the pleadings (Part III), the Court discusses the legal issues the parties raise. (Part IV). For reasons set forth below, the Court concludes under the facts that Quicken alleges that a bona fide purchaser under Georgia law would acquire a superior interest to Quicken's security deed from the time of cancellation of the existing security deed on February 26 until Quicken recorded its security deed on March 17. Under § 547(e)(2), therefore, perfection based on these facts occurred on March 17, and that is the date of the transfer under § 547(e)(1).

## II.  PROCEDURAL POSTURE

The parties have presented the date of transfer issue in an unusual procedural posture. Although the arguments Quicken raises are clearly defenses to the complaint, it chose to assert them in a counterclaim against the Trustee. Before the Court is the Trustee's motion to dismiss the counterclaim [9] under Fed. R. Civ. P.

12(b)(6), *applicable under* Fed. R. Bankr. P. 7012(b), for failure to state a claim on which relief can be granted.[7]

The Court could dismiss the motion the counterclaim on the ground that the Court cannot grant affirmative relief on it.  It is true that the counterclaim requests a determination that equitable subrogation applies and that a bona fide purchaser could not prevail against Quicken's unrecorded security deed, but the only purpose for the assertion of these theories is to defend against the Trustee's preference claim.  Nothing suggests that the Court can grant any affirmative relief on the counterclaim beyond denial of his preference claim.  So the counterclaim fails to state a claim on which relief can be granted against the Trustee, and it is subject to dismissal under Rule 12(b)(6) for that reason.

The counterclaim, however, raises important legal issues based on undisputed facts that are critical to the ultimate resolution of this proceeding. Because the parties have fully briefed them with the expectation that the Court will address them, the Court will rule on the issues in the interests of judicial economy and the convenience of the parties.

---

[7] Quicken asserted a counterclaim in its original Answer.  [4].  After the Trustee moved to dismiss the counterclaim [5], Quicken amended it to provide additional argument in support of its position [7] and argued that the motion to dismiss should be denied as moot in view of the amendment.  [8].  Rather than argue that point, the Trustee filed a motion to dismiss the amended counterclaim.  [9].  The Court in this Order refers to the amended counterclaim as the counterclaim and will rule on the Trustee's motion to dismiss the amended counterclaim.  The Trustee's motion to dismiss the original counterclaim is dismissed as moot in view of the filing of the motion to dismiss the amended counterclaim.

To do so in in accordance with appropriate procedural rules, the Court will treat the counterclaim as asserting dispositive defenses to the complaint and will treat the Trustee's motion to dismiss the counterclaim as a motion to strike the defenses as insufficient under Fed. R. Civ. P. 12(f), *applicable under* Fed. R. Bankr. P. 7012(b).  The standards for ruling on a Rule 12(f) motion are the same as those that govern a Rule 12(b)(6) motion.  *See, e.g., United States v. $ 79,000 in Account Number 2168050/6749900 at the Bank of New York,* 1996 WL 648934 (S.D.N.Y. 1996); Wright and Miller, 5C Fed. Prac. and Proc. Civ. § 1380 (3d ed.).  Thus, the Court must assume that the facts as stated in connection with the defense (*i.e.,* the allegations in the counterclaim) are true and then determine whether those facts, construed favorably to Quicken, fail to state a legal defense.

### III.  FACTS

The allegations in the Trustee's complaint that Quicken has admitted and the allegations that Quicken makes in its counterclaim, which the Court assumes to be true for purposes of ruling on the sufficiency of Quicken's defense, are as follows.

The Debtor and Marine Greiner purchased a residence in Cobb County, Georgia, for $ 260,000 on February 19, 2016.  They financed the property with a loan from Mortgage Lenders of America, LLC ("MLC") in the original principal amount of $ 268,580 and secured it with a security deed in its favor.  Marine Greiner later conveyed her interest in the residence to the Debtor by quitclaim.

Debtor thus became its sole owner.  (Complaint ¶¶ 14-17, [1] at 3; Amended Answer ¶¶ 14-17, 43-47), [7-1] at 2, 5-6).

On January 30, 2018, the Debtor refinanced the residence with a loan from Quicken in the amount of $ 269,134 and executed a security deed conveying the residence to Quicken to secure the note.  Proceeds of the loan in the amount of $ 261,764.23 were used to pay off the existing purchase-money note in favor of MLC.  (Amended Answer ¶¶ 48-50, [7-1] at 6).

The purchase-money security deed was cancelled of record on February 26, 2018.  (Amended Answer ¶ 51 [7-1] at 7).  Quicken recorded its security deed on March 17, 2018.[8]  (Complaint ¶ 19, [1] at 3; Amended Answer ¶ 19, [7-1] at 2).

The Debtor filed his Chapter 7 petition on June 8, 2018.  (Complaint ¶ 11, [1] at 11; Amended Answer ¶ 11, [7-1] at 2).  Thus, Quicken's recordation of its security deed occurred 56 days after its execution and 73 days before the filing of the petition.

Quicken asserts additional facts in connection with its argument that principles of inquiry notice would preclude a purchaser of the Debtor's residence prior to recordation of its security deed from acquiring the property unencumbered by its unrecorded deed.  Part IV(B) discusses these facts.

---

[8] The parties in their pleadings agree that Quicken recorded its security deed on March 17, 2018 (Complaint ¶ 19, [1] at 3; Amended Answer ¶ 19 [7-1] at 2), but the copy of the security deed attached to Quicken's amended answer shows a recordation date of March 27, 2018.  (Amended Answer, Exhibit "E", [7-5] at 1).  The discrepancy is immaterial, and the Court uses the March 17 date that the parties have chosen as the recordation date.

## IV.  DISCUSSION

As explained earlier, a transfer for purposes of the preference provisions of § 547 occurs when the transfer takes effect between the parties if it is perfected at, or within 30 days after, that time.  11 U.S.C. § 547(e)(2)(A).  Otherwise, the transfer takes place when it is perfected.  11 U.S.C. § 547(e)(2)(B).

A transfer of real estate is perfected "when a bona fide purchaser of such property against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee."  11 U.S.C. § 547(e)(1)(A).  The applicable law here is Georgia real estate law.  *E.g., Gordon v. Novastar Mortgage, Inc. (In re Hedrick),* 524 F.3d 1175, 1181 (11th Cir. 2008).

Georgia's race-notice recordation statute, O.C.G.A. § 44-2-1, provides:

Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land is located.  A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the prior deed.

Under this statute, a purchaser of real property for value and without notice of a preexisting but unrecorded interest acquires title unencumbered by the unrecorded interest.  The statute protects purchasers of real property from having their rights defeated by a prior but undiscoverable right that another might hold in

9

the property.  As the court noted in *Archer v. Kelley,* 194 Ga. 117, 127, 21 S.E.2d 51 (1942):

> It is by [the recording] statute made the plain duty of a grantee to record his deed, thereby giving constructive notice to every one of its existence and of his rights thereunder; and since it is thus made the duty of such grantee to supply notice, everyone is justified in relying upon an examination of the record and believing that a purchase of land will convey all title which the record fails to disclose is in another.

It is clear that a bona fide purchaser could not have acquired any rights in the property after Quicken recorded its deed.  The Trustee does not contend otherwise. The dispute, rather, is whether, under principles of equitable subrogation and inquiry notice, a bona fide purchaser could not have acquired rights superior to its security deed at any time before its recordation.

## A.  Equitable Subrogation

Under the doctrine of equitable subrogation in Georgia, when a lender advances money to pay off an existing encumbrance on real estate, the new lender will be subrogated to the rights of the prior encumbrancer under its security deed if the new lender is not chargeable with culpable or inexcusable neglect, unless the superior or equal equity of others would be prejudiced.  *E.g., Gordon v. Novastar Mortgage, Inc. (In re Hedrick),* 524 F.3d 1175, 1182 (11th Cir. 2008) (quoting

10

*Bankers Trust Co. v. Hardy,* 281 Ga. 561, 640 S.E.2d 18, 20 (2007) (quoting *Davis v. Johnson,* 241 Ga. 436, 246 S.E.2d 297, 300-301 (1978))).

Quicken advanced funds to pay off the note secured by the existing security deed, which permits it to claim equitable subrogation rights.  At the pleading stage of this adversary proceeding, the Court must assume that neither of the exceptions defeats those rights.

Equitable subrogation may establish perfection under § 547(e). *Id.*  Thus, Quicken may defend on the ground that its security deed had the same priority as the existing security deed and, therefore, that it was superior to the rights of a bona fide purchaser.

But Quicken's equitable subrogation rights that give priority over a purchaser expire when the existing security deed is cancelled of record.  Equitable subrogation principles work in tandem with the inquiry notice provisions of Georgia's real estate recordation law.  The rule is that, if an existing security deed is of record, a purchaser has inquiry notice of the existence of an encumbrance and cannot be a bona fide purchaser.  Upon cancellation of the security deed, however, the basis for inquiry notice no longer exists.  *See Gordon v. Novastar Mortgage, Inc. (In re Hedrick),* 524 F.3d 1175, 1183 (11th Cir. 2008) ("[A] purchaser of an interest in property has inquiry notice, and thus cannot be a bona fide purchaser, if he acquires his interest before earlier creditors' security deeds are cancelled.").

11

Under these principles, Quicken's interest in the Debtor's residence was perfected until the cancellation of the earlier security deed on February 26, 2018. Quicken did not record its security deed until March 17, 2018.  Between those two dates, a purchaser for value could have acquired title to the property superior to Quicken's unrecorded security deed unless it was charged with notice of it.  *See Gordon v. Novastar Mortgage, Inc. (In re Hedrick),* 524 F.3d 1175, 1184 (11th Cir. 2008) ("If [the new lender's] security deed had not been properly recorded before the other [existing] security deeds were cancelled, it would not have been perfected until it was recorded or the world was put on notice by some other means.").[9]

Quicken's defense depends, therefore, on its argument that it can establish facts that would charge a purchaser with notice of its unrecorded deed after cancellation of the security deed it satisfied.

---

[9] Quicken asserts that the quoted language in *Gordon v. Novastar Mortgage, Inc. (In re Hedrick),* is dictum.  Defendant's Response to Plaintiff's Motion to Dismiss Amended Counterclaim [12-1] at 10-11.   It may be, but the Court will apply its conclusion here for two reasons.  First, even if it is dictum, it is dictum by the Eleventh Circuit, which has appellate jurisdiction over rulings of this Court.  Second, this Court agrees with its conclusion.

  Moreover, the quoted statement is consistent with the court's earlier explanations of the operation of equitable subrogation in the context of addressing perfection and transfer issues under § 547(e).  See 524 F.3d at 1282-83 ("Any purchaser who acquired an interest in the [Debtors'] property during the time [the new lender] paid off the earlier debts and the time it recorded its own security deed could not be a bona fide purchaser under Georgia law, because the security deeds from the earlier debt remained on the record books and appeared to be in effect at all times during that period.") and 1284 ("[A] purchaser of an interest in property has inquiry notice, and thus cannot be a bona fide purchaser, if he acquires his interest before earlier creditors' security deeds are cancelled."

## B.  Inquiry Notice

Under Georgia law, a purchaser of real property takes it free of a prior unrecorded interest unless the purchaser had actual or constructive notice of it[10] or if the circumstances give rise to a duty of inquiry that would have led to the discovery of the prior interest, so-called "inquiry notice."[11]  A bankruptcy trustee's rights are not subject to anyone's actual notice of an unrecorded interest. Determination of the issue here, therefore, involves only constructive and inquiry notice.

A purchaser of land is charged with constructive notice of the content of a recorded instrument within the chain of title and is presumed to know every other fact that the examination suggested.  *Gallagher v. Buckhead Community Bank,* 299 Ga. App. 622, 625, 683 S.E.2d 50 (2009).

The concept of inquiry notice "imputes knowledge of an earlier interest to a later purchaser of an interest in land whenever there is '[a]ny circumstance which would place a man of ordinary prudence fully upon his guard and induce serious inquiry.'" *Gordon v. Novastar Mortgage, Inc. (In re Hedrick),* 524 F.3d 1175, 1183 (11th Cir. 2008) (applying Georgia law) (quoting *Page v. Will McKnight Constr., Inc.,* 282 Ga. App. 571, 639 S.E.2d 381 (2006)).

---

[10] *E.g., VATACS Group, Inc. v. HomeSide Lending, Inc.,* 276 Ga. App. 386, 623 S.E.2d 534 (2005); *Virginia Highland Civic Ass'n v. Paces Properties, Inc.,* 250 Ga. App. 72, 550 S.E.2d 128 (2001) (citing *Anderson v. Streck,* 190 Ga. App. 224, 378 S.E.2d 526 (1989)).
[11] *E.g. Wells Fargo Bank, N.A. v. Gordon,* 292 Ga. 474, 749 S.E.2d 368 (2013) (quoting *Deljoo v.. SunTrust Mortg., Inc.,* 284 Ga. 438, 668 S.E.2d 245 (2008)).

Georgia law also charges a purchaser with notice of any fact that would be found after such inquiry.[12] O.C.G.A. § 23-1-17 codifies this principle:

Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties.

If the duty to inquire is triggered, a purchaser is deemed to have notice of everything that an inquiry would have uncovered. *E.g., Deljoo v. SunTrust Mortg., Inc.,* 284 Ga. 438, 439, 668 S.E. 2d 245, 246 (2008). If a purchaser does not make an inquiry or explain why the inquiry would have been futile, "it will be presumed that due inquiry would have disclosed the existent facts." *Henson v. Bridges,* 218 Ga. 6, 10, 126 S.E.2d 226, 228 (1962).

Quicken begins its argument that a purchaser of the Debtor's residence would have discovered its unrecorded security deed with the proposition that a purchaser exercising ordinary prudence would hire an attorney to close the transaction because "only attorneys properly licensed in Georgia are authorized to close real estate transactions." *In re UPL Advisory Opinion 2003-2,* 277 Ga. 472, 473, 588 S.E.2d 741, 742 (2003). (Amended Answer [7-1] at ¶¶ 66- 67). The

---

[12]*E.g., Deljoo v. SunTrust Mortg., Inc.,* 284 Ga. 438, 439, 668 S.E.2d 245 (2008) (quoting *Talmadge Bros. & Co. v. Interstate Bldg. & Loan Ass'n,* 105 Ga. 550, 554, 31 S.E. 618 (1898)) ("For more than a century, it has been recognized that a purchaser of land 'is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed'.").

Court questions whether a person must hire an attorney to purchase real property in Georgia[13] but will accept Quicken's position for current purposes.

Quicken continues that an attorney would conduct a title examination. (Of course, a prudent purchaser would conduct a title examination even if it did not retain an attorney since records in the chain of title provide constructive notice of their contents.)   The purpose of a title examination is to determine that title is marketable and that it is "shown by the record to be marketable and subject to no other encumbrances."  Hinkel, *Georgia Real Estate Title Examinations and Closings,* § 2:4 (2018).  (Amended Answer [7-1] at  ¶¶ 68-72).

Quicken then alleges, and proposes to prove, that title examiners and closing attorneys believe that the absence of a security deed encumbering a property is sufficient to excite attention and trigger a duty to inquire further.   In this regard, Quicken alleges that some title examiners who find no open security deed on a subject property include in the title report a direction to the client to inquire about the existence of a security deed or to confirm that none exist.  Further, Quicken asserts that a purchaser of ordinary prudence, or the purchaser's attorney, would ask the seller if any open security deeds existed.  (Amended Answer [7-1] at ¶¶ 73-78).

---

[13] It seems to the Court that the rule that a person who is not an attorney cannot close a real estate sale prohibits a non-attorney from performing services *for another* in connection with a closing, not prohibiting a non-attorney from closing his or her own sale.

Quicken argues that a hypothetical purchaser of the residence would receive a title examiner's report that would include such a warning. The warning would be a fact that imposed a duty on a purchaser of the Debtor's residence to inquire about whether an unrecorded security deed existed, which would have led to discovery of its unrecorded security deed. If the purchaser ignored the warning and failed to inquire, the purchaser would nevertheless be charged with notice under the principle stated in O.C.G.A. § 23-1-17 that "[i]gnorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of the parties."

In any event, Quicken argues, proper real estate closing practice requires the closing attorney to obtain an affidavit from the seller stating that no undisclosed encumbrances exist. Hinkel, *Georgia Real Estate Title Examinations and Closings,* § 3.99 (2018). Following this practice, Quicken concludes, would result in the purchaser having notice of its unrecorded security deed because the seller would not commit perjury by failing to disclose it.

In summary, Quicken's position is that a purchaser must hire an attorney; that the attorney must conduct a title examination; that the attorney must inquire about an unrecorded security deed if the title examination does not show any on the real estate records; that the attorney must obtain an affidavit from the seller at closing that no undisclosed security deeds or other encumbrances exist; and that the required inquiry will result in disclosure of the unrecorded security deed.

The legal theory is a novel one.  Neither party has cited any case that addresses it.

It is, however, fundamentally inconsistent with established principles of Georgia law dealing with recordation of interests in real estate law and the effect of improper recording on a bona fide purchaser.

Georgia law is clear that the recordation of an improperly attested security deed provides no constructive notice of its contents.  *E.g.,* O.C.G.A. § 44-14-39 ("A mortgage which is recorded . . . without due attestation . . . shall not be held to be notice to subsequent bona fide purchasers."); *U.S. Bank, N.A. v. Gordon,* 289 Ga. 12, 15, 709 S.E.2d 258 (2011).  The recordation of an improperly attested security deed does not put a subsequent bona fide purchaser on inquiry notice, either.  *Wells Fargo Bank, N.A. v. Gordon,* 292 Ga. 474, 477,  749 S.E. 2d 368 (2013); *Detention Management, LLC v. UMB Bank, NA (In re Municipal Corrections, LLC),* 501 B.R. 119, 134 (Bankr. N.D. Ga. 2013).

Under these principles, a bona fide purchaser is not charged with inquiry notice of a security deed in the chain of title if it is not properly attested.  Georgia law effectively treats the document as if it were not recorded and as providing no notice of its contents.  If an improperly attested security deed in the chain of title that a title examiner (or prudent purchaser) would actually discover provides no notice of its contents and no basis for inquiry notice because it should not have

been there, then surely the complete absence of any open security deed in the record cannot create a duty to inquire into whether one exists.

Quicken's theory also depends on an assumption that an inquiry to the seller would produce a truthful response about the existence of an unrecorded security deed. Such an assumption is inconsistent with the very purpose of the recording statutes, which are designed to reveal the true status of a seller's title, and the fact that a seller may be motivated to conceal an encumbrance so as to avoid paying it. *See Gallagher v. Buckhead Community Bank,* 299 Ga. App. 622, 629, 683 S.E.2d 50 (2009) (Seller's affidavit failed to disclose judgment lien against seller in her birth name in order to defraud the judgment creditor. The court stated, "[T]here is no reasonable basis upon which to assume that [the seller] would have voluntarily divulged any information that would have led to the discovery of the fi. fa. and, as a consequence, deprived her of the proceeds of the sale of the property.").

Although cases dealing with inquiry notice generally focus on what information in the documents in the chain of title require further inquiry, the court in *Gallagher v. The Buckhead Community Bank,* 299 Ga. App. 622, 626, 683 S.E.2d 50, 54 (2009), stated that information that "occurs during the sale" could provide a basis for inquiry. Under this formulation of inquiry notice, the holder of an unrecorded security deed presumably could establish that, at the closing or otherwise, a purchaser learned some fact that would require it to investigate.

18

Notice of this nature, however, is actual notice based on specific circumstances that occur in a real transaction.  It is not based on objective facts that apply regardless of the particular facts of the case.  In the context of application of Georgia's bona fide purchaser rules for purposes of the avoidance provisions of the Bankruptcy Code such as § 547(e), no actual closing has occurred, and a hypothetical bona fide purchaser for those purposes is not charged with actual notice.

Assuming that Quicken's allegations are true, the Court concludes as a matter of law that they do not establish that Quicken's security deed was perfected between the time of cancellation of the previous security deed and the recordation of its security deed.  Quicken may invoke the doctrine of equitable subrogation (subject to the Trustee's right to contest its applicability based on the facts of this proceeding) to establish perfection until cancellation of the prior security deed, but its allegations as a matter of law do not establish that perfection, and therefore transfer occurred when Quicken recorded its security deed on March 17.  The allegations with regard to the status of a bona fide purchaser after cancellation of the existing security deed, therefore, state an insufficient defense that should be stricken under Rule 12(f).

## V.  CONCLUSION

Paragraphs 40 through 64 of the Amended Answer (included as part of the purported counterclaim) either repeat, or elaborate on, undisputed facts or state general legal principles, and paragraphs 80-82 assert Quicken's claim of equitable subrogation.  The Court will permit those paragraphs to stand as part of Quicken's answer to the Trustee's complaint.

Paragraphs 65 through 78 allege facts and state legal conclusions to support Quicken's position that its security deed was perfected between the time of cancellation of the previous security deed and the recordation of its security deed. Because those facts and legal conclusions state an insufficient defense, the Court will strike them pursuant to Fed. R. Civ. P. 12(f), *applicable under* Fed. R. Bankr. P. 7012(b).   The Court will also strike paragraph 79 because it incorporates paragraphs that are stricken.

Based on, and in accordance with, the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1.  The Trustee's original Motion to Dismiss Counterclaim [5], is **DISMISSED** as moot.

2.  The Court disposes of the Trustee's Motion to Dismiss Amended Counterclaim [9] as follows:

A.  The Amended Counterclaim, as set forth in the Amended Answer, is **DISMISSED** as a counterclaim.  The Trustee need not respond to it.

B.  The Amended Counterclaim, as set forth in the Amended Answer, will be treated as asserting defenses to the Trustee's complaint.

C.  The Trustee's Motion to Dismiss Amended Counterclaim is treated as a motion to strike the defenses asserted in the Amended Counterclaim (treated as a part of Quicken's answer) under Fed. R. Civ. P. 12(f), *applicable under* Fed. R. Bankr. P. 7012(b), because they state an insufficient defense.  The Court will **GRANT IN PART AND DENY IN PART** the motion to strike as follows:

(1)  Paragraphs 65 through 79  of the Amended Answer are hereby **STRICKEN.**

(2)  Paragraphs 40 through 64 and 80-82 are **NOT STRICKEN**.  The allegations in said paragraphs shall form part of Quicken's answer to the Trustee's complaint.

**[THIS ORDER HAS NOT BEEN PREPARED FOR PUBLICATION AND IS NOT INTENDED FOR PUBLICATION.]**

[END OF ORDER]

Distribution List

Neil C. Gordon
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

William D. Matthews
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

J. Kelsey Grodzicki
Campbell & Brannon, LLC
Suite 350
5565 Glenridge Connector
Atlanta, GA 30342